**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

| | | |
|---|---|---|
| **DEERE & COMPANY,** a Delaware corporation, | ) ) ) | Case No. 5:15-cv-105-TBR |
| **PLAINTIFF,** | ) ) | |
| v. | ) ) ) ) | **PLAINTIFF DEERE'S MEMORANDUM OF LAW** |
| **FIMCO INC. dba SCHABEN INDUSTRIES,** an Iowa corporation, | ) ) ) ) | **IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM III** |
| **DEFENDANT.** | ) ) ) | |

## I.   INTRODUCTION

For many decades, Plaintiff Deere & Company ("Deere") has sold both tractors and a variety of towed agricultural equipment in its distinctive "John Deere Green" and yellow colors. Deere's green and yellow color scheme for agricultural equipment is well-known and widely recognized, and Deere owns several trademark registrations for the green and yellow colors for such equipment.

Alas, as the Sixth Circuit recently noted, "[s]uccess attracts imitators." *Maker's Mark Distilery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 416 (6th Cir. 2012). Defendant FIMCO Inc. (dba Schaben Industries) ("FIMCO") is one such imitator, selling agricultural equipment (such as sprayers and spreaders) in green and yellow colors—indeed, in shades of green and yellow similar to Deere's equipment.

FIMCO asserts in its Counterclaims that it sells its equipment in green and yellow precisely because Deere tractor owners like towed equipment that matches their tractors. If FIMCO is correct, it is inevitable that there would be consumer confusion created by FIMCO's use of similar colors to those registered by Deere. Purchasers are bound to believe that FIMCO's green and yellow equipment is somehow affiliated with or associated with Deere. And so it is.

As alleged in FIMCO's Counterclaims, Deere has already conducted a consumer survey to assess the harm caused by FIMCO's use of the same green and yellow colors on its equipment. *See* Dkt. No. 5, Counterclaims ¶ 21. The survey showed substantial consumer confusion caused by FIMCO's use of green and yellow: Some forty percent of survey respondents, all of whom were farming professionals, incorrectly believed that FIMCO's equipment was somehow affiliated with, sponsored by, or endorsed by Deere (notwithstanding the fact that FIMCO's "Schaben" logo was prominently displayed on the equipment illustrated in the survey).[1]

In response to Deere's claims of infringement, FIMCO has asserted counterclaims seeking declarations that it is not infringing. Which party is right—whether FIMCO's conduct infringes on Deere's rights—will require discovery and further proceedings. But FIMCO has asserted an additional counterclaim, Counterclaim III, that is improper as a matter of law. This counterclaim seeks to invalidate Deere's trademark rights on the theory that FIMCO is entitled to sell towed equipment in Deere's trademarked green and yellow colors because owners of Deere tractors "prefer to have equipment in colors similar to their tractors." Counterclaims ¶ 39. The contention that this kind of obvious free-riding is permitted by trademark law is wrong as a matter of law. Following key Supreme Court decisions on color trademarks and on functionality, courts have repeatedly rejected the assertion that a trademark is functional because consumers wish to have different products bearing the same trademark. As FIMCO's invalidity counterclaim fails as a matter of law, even taking FIMCO's cursory factual allegations as true, that counterclaim should be dismissed now.

---

[1] The survey respondents' reasons for their confusion were consistent, and revealing. As they explained, they believed that Deere manufactured the Schaben sprayer "because of the trade colors green & yellow," because the sprayer was "painted in the traditional John Deere green and yellow," because of the "[y]ellow and green color," and so on. Even one respondent who thought that the sprayer was made by "Schban [sic]" went on to explain that this "was just the name on the tank that I saw" and said that the Schaben sprayer "could just as easily be [J]ohn [D]eere with the yellow and green colors."

## II.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

According to FIMCO's Counterclaim, Deere is "a publically held corporation which manufactures and sells agricultural equipment, construction equipment, and commercial and consumer lawn and garden equipment worldwide." Counterclaim ¶ 8. Deere "offers a broad range of agricultural, forestry, lawn, and garden equipment bearing the Deere Colors. Deere has been manufacturing and selling such equipment for more than 100 years." Complaint ¶ 3; *see* Answer ¶ 3 (admitting). Deere owns multiple federal trademark registrations for using its signature bright green and bright yellow colors on sprayers, tractors, and other wheeled agricultural equipment. *Id.* ¶¶ 9-11; *see* Complaint ¶¶ 11–14, Exs. 1–3. According to FIMCO's allegations, Deere's tractors and equipment are predominantly green with yellow in color. Counterclaim ¶ 13.

FIMCO's Counterclaim alleges that it "is the largest manufacturer of lawn and garden sprayers in the United States," and its products include "lawn attachments and trailer carts." Counterclaim ¶ 7. Like Deere's equipment, FIMCO's equipment is alleged to be predominantly yellow and green (although FIMCO alleges that the relative proportions of yellow and green on its equipment differ from Deere's equipment). *Id.* ¶¶ 12-14; *see* Answer ¶ 22. FIMCO has alleged that it uses green and yellow, Deere's color scheme, to appeal to customers who prefer to have sprayers that match their tractors—that is, tractors that bear Deere's green and yellow colors. *Id.* at ¶ 24; Counterclaim ¶ 39.

On April 27, 2015, plaintiff Deere filed its Complaint against FIMCO, alleging claims for trademark infringement, unfair competition, and dilution under federal law as well as common law trademark infringement. Complaint ¶ 1. These claims focus on the allegation that FIMCO's use of green and yellow on its equipment creates a likelihood of confusion with respect to Deere's registered trademarks or dilutes those marks. *See* Complaint ¶¶ 25-46.

On June 23, 2015, FIMCO answered the Complaint and asserted four counterclaims. *See* Dkt. No. 5 (Answer and Counterclaims). Three of FIMCO's counterclaims are declaratory relief

claims that simply mirror Deere's causes of action, as FIMCO seeks declarations that it is not engaged in trademark infringement, unfair competition, dilution, or false designation of origin. *See* Counterclaim ¶¶ 22-35, 42-45. In contrast, one of FIMCO's counterclaims, Counterclaim III, seeks a declaration of invalidity as to, and cancellation of, Deere's trademark registrations. *See id.* ¶¶ 36-41. Specifically, Counterclaim III contends that Deere's trademarks place other manufacturers of agricultural products (such as FIMCO) at a "significant disadvantage *because purchasers of agricultural products prefer to have equipment in colors similar to their tractors*"—that is, their Deere tractors, which are alleged to be green and yellow. *Id.* ¶ 39 (emphasis added); *see id.* ¶ 13. As a result, FIMCO claims, "the colors yellow and green in the abstract are functional" and not protectable under the Lanham Act. *Id.* ¶40. So the key (indeed, only) factual contention underlying FIMCO's Counterclaim III is that Deere's trademark color scheme is invalid as functional because customers prefer towed equipment with colors similar to their existing (Deere) tractors. *See id.* ¶ 39–41.

## III.   ARGUMENT

FIMCO's counterclaim for trademark invalidity, Counterclaim III, fails as a matter of law because it does not allege facts that, if true, establish Deere's trademark registrations are invalid on the ground of functionality.

### A.   Legal Standard on a Motion to Dismiss.

A claim cannot survive a motion to dismiss under Rule 12(b)(6) when its factual allegations cannot "sustain a recovery under some viable legal theory." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). On a Rule 12(b)(6) motion, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id*. However, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Counterclaim III Fails as a Matter of Law Because It Does Not Allege Facts Showing Deere's Green and Yellow Colors Are Functional.

Trademark law seeks to promote competition by protecting firms' reputations and avoiding consumer confusion. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854, n. 14 (1982). As the Supreme Court has explained, a trademark "quickly and easily assures a potential customer that *this* item—the item with this mark—is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past." *Qualitex*, 514 U.S. at 164.

Here, FIMCO has admitted that Deere owns the federal trademark registrations asserted in the action. *See* Complaint ¶¶ 11-13 (alleging and attaching registrations); Answer ¶¶ 11-13 (admitting that each registration is "owned by Deere"). On the face of the registrations, those trademarks have been registered for more than five years and are therefore "incontestable" under 15 U.S.C. § 1065; *see Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 417 (6th Cir. 2012). "Incontestability is 'conclusive evidence of the validity of the registered mark,' except as to certain statutorily enumerated challenges." *Id.* at 417-18. The only ground for invalidity of Deere's trademark registrations alleged in FIMCO's Counterclaim III is that the registered marks are "functional and are therefore not protectable under the Lanham Act." Counterclaim ¶ 40; *see* 15 U.S.C. § 1115(b)(8) (enumerating "that the mark is functional" as an available defense to an otherwise incontestable mark); *see also* 15 U.S.C. § 1052(e)(5) (functional mark can be refused registration); *see generally Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998) (defendant challenging registered trademark "has the laboring oar on all issues relating to validity, including functionality").

The functionality doctrine prevents trademarks from "inhibiting legitimate competition by allowing a producer to control a useful product feature"—because functional features of a product are the province of patent law. *Qualitex*, 514 U.S. at 164. The Supreme Court has articulated, and the Sixth Circuit has effectively applied, two standards for assessing whether a trademark is functional. Under the traditional test, a trademark is functional "if it is essential to

4

the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs.,* 456 U.S. at 850, n. 10); *see Maker's Mark*, 679 F.3d at 417-18. "Where the design is functional under the [traditional] *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001).

In addition, the Supreme Court has stated in dicta that where "[a]esthetic functionality [i]s the central question," courts may also "consider if there is a competitive necessity for the feature" by inquiring whether its exclusive use places competitors at a "significant non-reputation-related disadvantage." *Id.* The Sixth Circuit has not expressly adopted the "aesthetic functionality" doctrine, but it has applied a "competition theory of functionality," under which "'where an aesthetic feature (like color), serves a significant function . . . courts should examine whether the exclusive use of that feature by one supplier would interfere with legitimate competition.'" *Maker's Mark*, 679 F.3d at 418 (quoting *Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 155 (6th Cir. 2003)).

Here, under either standard for functionality, FIMCO's allegations, taken as true, do not establish that Deere's registered trademark is functional, so the counterclaim for invalidity and cancellation should be dismissed as a matter of law.

      **1.**      **FIMCO's Counterclaim III Fails to State a Claim that Deere's Trademarks Are Functional Under the Traditional Rule.**

Under the traditional test for functionality, FIMCO must allege facts that, if true, would establish that Deere's trademark color scheme is "essential to the use or purpose" or "affects the cost or quality" of its equipment. *Qualitex*, 514 U.S. at 165. FIMCO's Counterclaim III contains no allegations that the colors green and yellow are essential to the use or purpose of its equipment, or that using these colors on its products lowers cost or improves quality. *See* Counterclaims ¶¶ 36-41. Instead, as noted, FIMCO's only factual contention is that "purchasers of agricultural products prefer to have equipment in colors similar to their tractors."

5

Counterclaim ¶ 39. That consumers merely prefer to have sprayers that match their tractors is not sufficient to state a claim that Deere's trademarks are functional under the traditional standard.

For example, in *Kerr Corp. v. Freeman Mfg. & Supply Co.*, the plaintiff claimed trade dress rights in its use of eight colors for jewelry injection wax. No. 08-3330, 2009 WL 750986, at *5 (6th Cir. Mar. 23, 2009). The defendant contended the colors were "'functional features' of the wax." *Id.* The Sixth Circuit rejected this argument, because the waxes could have been made and marketed in different colors. *See id.* at *6 ("There is testimony that the lightness or darkness of a wax has some impact on its 'readability'; but there is no evidence that any specific color, or specific set of colors, provides any functional advantage."). Here, FIMCO does not (and could not, in good faith) allege that the use of green and yellow colors on its equipment has any relevance to the function of the equipment or to its cost. So FIMCO does not state a claim for functionality under the traditional test.

### 2. FIMCO Fails to State a Claim that Deere's Trademarks Are Within the Sixth Circuit's "Competition Theory" of Functionality.

FIMCO's Counterclaim III also fails to state a claim that Deere's trademark green and yellow colors are within the Sixth Circuit's "competition theory" of functionality. The Sixth Circuit has considered two standards within the "competition theory of functionality" to "determine whether a trademark is functional." *Maker's Mark*, 679 F.3d at 418. First, "[t]he test for comparable alternatives asks whether [] protection of certain features would nevertheless leave a variety of comparable alternatives that competitors may use to compete in the market." *Id.* (citation omitted). Second, "[t]he effective competition test asks . . . whether [] protection for a product's feature would hinder the ability of another manufacturer to compete effectively in the market for the product." *Id.* (citation omitted); *see Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 642 (6th Cir. 2002). FIMCO does not plead a proper claim of functionality under either standard.

As to the comparable alternatives test, FIMCO has not pled that there are no comparable alternatives to using green and yellow as the colors of its equipment. Nor could it. As noted above, FIMCO only alleges that being unable to use Deere's trademark color scheme places manufacturers "at a significant disadvantage because purchasers of agricultural products prefer to have equipment in colors similar to their tractors." Counterclaim ¶ 39. As a practical matter, even if it is true and legally relevant that purchasers desire equipment in colors compatible with their tractors (discussed further below), FIMCO has many available alternatives to Deere's trademark green and yellow color scheme. In *Maker's Mark*, the Sixth Circuit considered and quickly disposed of the claim that the distinctive red wax seal of the Marker's Mark bottle was functional: "There is more than one way to seal a bottle with wax to make it look appealing, and so Cuervo fails the comparable alternatives test." 679 F.3d at 418.

Just so here, there is a wide range of colors available for FIMCO to use for its equipment—red, brown, grey, orange, blue, tan, rust, to name a few. And, critically, even if FIMCO insists that its equipment should have green or yellow as part of a consistent color scheme, there is no reason FIMCO must use green *and* yellow, as Deere does—let alone shades of green and yellow close to those used by and associated with Deere. FIMCO could paint its equipment all green, or all yellow, or use a number of other colors paired with green *or* yellow. Put simply, there is no plausible basis for FIMCO to contend that its lacks comparable alternatives for painting its equipment in the marketplace—and it has not so alleged.

FIMCO also has not adequately pled that precluding it from painting its equipment green *and* yellow would "hinder [its] ability . . . to compete effectively in the market for the product." *Maker's Mark*, 679 F.3d at 418 (citation omitted). To meet this standard, FIMCO must plead *facts* establishing that not being able to use both colors together would put it at a "significant non-reputation-related disadvantage." *Id.* at 419 ("'red wax is not the only pleasing color of wax . . . nor does it put competitors at a significant non-reputation related disadvantage to be prevented from using red dripping wax.'") (quoting district court); *see TrafFix Devices*, 532 U.S.

7

at 32. Here, as noted, the only factual allegation in support of the counterclaim is the contention that consumers "prefer to have equipment in colors similar to their tractors." Counterclaim ¶ 39. As a matter of law, this is insufficient to support a claim of functionality.

As numerous Courts of Appeal have held, the fact that a consumer is attracted to the trademark of a particular product (here, green and yellow) because the mark corresponds to or matches a product the consumer already owns (from the same source) does not put a competitor at a "significant non-reputation-related disadvantage." For example, in *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062 (9th Cir. 2006), the defendant sold key chains and license plates bearing the plaintiff's trademarks, such as logos for Audi and Volkswagen. *Id.* at 1065. When sued for infringement, the defendant contended—much like FIMCO here—that consumers wanted car accessories that matched the trademarks on their cars, so the trademarks were "functional." The Ninth Circuit rejected this contention because the "alleged aesthetic function is indistinguishable from and tied to the mark's source-identifying nature." *Id.* at 1074. In other words, the alleged demand for the defendant's products "is inextricably tied to the trademarks themselves." *Id.* (citing *Qualitex*, 514 U.S. at 170). So, the Ninth Circuit held, "[a]ny disadvantage [defendant] claims in not being able to sell Volkswagen or Audi marked goods is tied to the reputation and association with Volkswagen and Audi." *Id.* The larger point was not lost on the Court of Appeals:

> Accepting Auto Gold's position would be the death knell for trademark protection. It would mean that simply because a consumer likes a trademark, or finds it aesthetically pleasing, a competitor could adopt and use the mark on its own products. Thus, a competitor could adopt the distinctive Mercedes circle and tri-point star or the well-known golden arches of McDonald's, all under the rubric of aesthetic functionality.

457 F.3d at 1064.

Similarly, in *W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir. 1985), the Seventh Circuit held that "a feature is not functional merely because, if someone happens to own an item that has the feature, he might want any other item displayed or connected with it to have the identical

feature so that the two items would look alike, would be a matched pair." *Id.* at 346-47. Judge Posner went on to explain:

> The biggest objection to the point about décor compatibility, however, is that it is an open Sesame to trademark infringement. Suppose Mr. Keene owned a complete set of Meissen china, and one of the plates broke. He might care more about replacing it with a plate that looked exactly like the plate that had broken than about who made the plate; but it would not follow that someone could make exact duplicates of Meissen china for sale to people who care more about aesthetic compatibility than about source. . . . *Otherwise we might be forced to admit that General Motors can duplicate the Rolls Royce, because a person who had one Rolls Royce might think a second Rolls would look good next to it in his garage.*

*Id.* at 344 (emphasis added). And in *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206 (2d Cir. 2012), the Second Circuit cautioned that "in determining whether a mark has an aesthetic function so as to preclude trademark protection," courts should "take care to ensure that the mark's very success in denoting (and promoting) its source does not itself defeat the markholder's right to protect that mark." *Id.* at 222.

Here, FIMCO essentially seeks to turn Deere's trademark success against it. After alleging that Deere's tractors are predominantly green with yellow (Counterclaim ¶ 13), FIMCO alleges that it would be unfair to prevent it from selling towed equipment in green and yellow because "purchasers of agricultural products prefer to have equipment in colors similar to their tractors." *Id.* ¶ 39. This is essentially equivalent to the argument that a party can, for example, sell a scarf using Burberry's trademark plaid pattern simply by claiming that consumers wish their scarves to match their patterned (Burberry) jackets—an argument rejected by the decisions set out above. As these cases establish, even if consumers' desire for "equipment in colors similar to their tractors" puts FIMCO at a "significant disadvantage," this is *not* a "non-reputation-related" disadvantage, as required by the Supreme Court. *TrafFix*, 532 U.S. at 32; *cf.* Counterclaim ¶¶ 39-40.

FIMCO may contend that its invalidity counterclaim finds support in *Deere & Co. v. Farmhand, Inc.*, 560 F. Supp. 85 (S.D. Iowa 1982), *aff'd*, 721 F.2d 253 (8th Cir. 1983). There,

9

Deere sought to enforce a trademark in the color green for farm equipment. The district court found that the color green, even if protectable as a mark, was aesthetically functional because "farmers prefer to match their loaders to their tractor." 560 F. Supp. at 98. For several reasons, *Farmhand* cannot support FIMCO's Counterclaim III. First, the central premise of the decision is contrary to more recent decisions of the Supreme Court as well as the Sixth Circuit. In *Farmhand*, the Court "d[id] not agree that the availability of alternative designs aid[ed] plaintiff in its quest for protection." *Id.* at 96. But since *Farmhand*, the Supreme Court and the Sixth Circuit have held the opposite—that inquiring into the existence of "comparable alternatives," *see Maker's Mark*, 679 F.3d at 418, or "if [the feature] is essential to the use or purpose of the article," *TrafFix Devices*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165), are appropriate tests for functionality. Moreover, while *Farmhand* expressed skepticism that color can function as a trademark at all (*see id.* at 97), that question was answered decisively thirteen years later by the Supreme Court's holding in *Qualitex* that color alone can be protected as a mark. *See* 514 U.S. at 166. And, *Farmhand* did not have, and so did not apply, the more rigorous standard set out in the Supreme Court's 2001 *TrafFix* decision that courts must "inquire" as to whether recognizing the trademark "would put competitors at a *significant non-reputation-related disadvantage*." 532 U.S. at 32 (emphasis added).

In addition, *Farmhand* concerned only the color green as a trademark, while this case is about FIMCO's unauthorized use of Deere's registered mark for green *and* yellow. *See Kerr Corp. v. Freeman Mfg & Supply Co.*, No. 08-3330, 2009 WL 750986, at *6 (6th Cir. Mar. 23, 2009) ("At any rate, whether any particular color provides a functional advantage is largely irrelevant, because Kerr does not claim [] rights in any particular color. Rather, Kerr claims rights only in its overall color *scheme*.") (emphasis in original). As noted, FIMCO is free to use green with another color *or* yellow with another color—both of which, according to its own pleading, would meet FIMCO's objective of allowing farmers to have FIMCO equipment in colors "similar" to their tractors. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters,*

10

*Inc.*, 280 F.3d 619, 644-45 (6th Cir. 2002) (various elements of claimed trade dress not functional where they "leav[e] competitors a variety of other [] options"); *see also L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1353 (Fed. Cir. 1999) (reversing the lower court's holding that a trademarked color of a light fixture was functional because it was compatible with the color of many interior furnishings); *Unique Sports Prods., Inc. v. Ferrari Importing Co.*, No. 1:09-CV-660-TWT, 2011 WL 284442, at *3 (N.D. Ga. Jan. 24, 2011) ("The mere popularity of LIGHT BLUE, however, does not indicate that the color itself is functional."); *cf. Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 1532 (Fed. Cir. 1994) (black outboard boat motor was functional because black, unlike any other color, both decreased the apparent size of the motor *and* ensured compatibility with many different boat colors). Given the range of possible color combinations, FIMCO is free to create its own "aesthetically pleasing mark designs." *Qualitex*, 514 U.S. at 170. But FIMCO may not use green *and* yellow in shades similar to Deere's registered mark and in a manner that causes confusion—and then claim Deere's mark is functional because consumers want towed equipment to match their Deere tractors.[2]

---

[2] Consistent with this reasoning, two district courts in this Circuit recently held that a color scheme for the packaging of paintbrushes was "not functional under any functionality test adopted by this Circuit." *Sherwin-Williams Co. v. Wooster Brush Co.*, No. 5:12CV03052, 2015 WL 1471617, at *6 (N.D. Ohio Mar. 31, 2015); *Sherwin-Williams Co. v. JP Int'l Hardware, Inc.*, 988 F. Supp. 2d 815, 819–20 (N.D. Ohio Dec. 13, 2013). Under the comparable alternatives test, the courts reasoned that there is "more than one way to [package a paint brush] to make it look appealing." *Sherwin-Williams*, 2015 WL 1471617, at *6 (quoting and adopting the same finding of functionality as *JP Int'l Hardware, Inc.*, 988 F. Supp. 2d at 819). Under the effective competition test, the courts reasoned that no competitor would "need to use a similar—let alone a virtually identical—design" on its paintbrush packaging in order to compete effectively with the trademark owner. *Id*. at *6 (quoting and adopting the same finding of functionality as *JP Int'l Hardware, Inc.*, 988 F. Supp. 2d at 820). These cases affirm that to allege that a trademark is invalid because its colors make it attractive to consumers, a defendant must allege that there are no viable color scheme alternatives—which FIMCO has not alleged here.

## IV. CONCLUSION

Whether FIMCO's use of green and yellow on its towed equipment creates a "likelihood of confusion" with Deere's registered marks—the touchstone of trademark infringement (*Maker's Mark*, 679 F.3d at 419)—and whether any of FIMCO's other defenses are valid must wait for another day in this litigation. But even accepting its allegations as true, FIMCO's counterclaim as to invalidity and cancellation fails as a matter of law and should be dismissed now.

Dated: July 14, 2015

Respectfully submitted,

*/s/D. Craig York*
D. Craig York
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Telephone: 502-581-8037
Craig.York@dinsmore.com

*/s/Simon J. Frankel*
Simon J. Frankel (admitted *Pro hac vice*)
Rebecca A. Jacobs (admitted *Pro hac vice*)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111
Telephone: 415-591-7052
sfrankel@cov.com
rjacobs@cov.com

Attorneys for Plaintiff
DEERE & COMPANY