UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:15-CV-105-TBR

DEERE & COMPANY,                                              PLAINTIFF/COUNTER-DEFENDANT

v.

FIMCO INC., d/b/a/ SCHABEN
INDUSTRIES,                                                    DEFENDANT/COUNTER-CLAIMANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Deere & Company's Motion for Sanctions for FIMCO's Failure to Comply with the Court's Orders to Provide a list of Its Dealers. [DN 94.] Defendant FIMCO Inc. responded. [DN 109.] Deere replied. [DN 128.] This matter is now ripe for adjudication. For the reasons stated herein, Plaintiff's motion [DN 94] is **DENIED**.

BACKGROUND

In the instant action, Plaintiff Deere & Company ("Deere") brought suit against Defendant FIMCO Inc., d/b/a Schaben Industries ("FIMCO), alleging four causes of action relating to FIMCO's use of yellow and green colors on its towed agricultural equipment. [DN 1 at 5.] Deere alleges that FIMCO has infringed upon and diluted its trademarks and seeks a permanent injunction prohibiting FIMCO from "using the Deere Colors trademark in connection with its sprayers and wheeled agricultural equipment, as well as an injunction ordering [FIMCO] to cease using yellow tanks or wheels in connection with wheeled agricultural equipment having green vehicle bodies." [*Id.* at 1–2; 5–9.] FIMCO denied any infringing activity, raised various affirmative defenses, and counterclaimed, seeking cancellation of Deere's trademarks and declaratory judgments finding that it has not engaged in infringing activity, dilution, or unfair competition. [DN 5 at 7–15.]

1

In furtherance of its claims of trademark infringement, Deere sought to discover information relating to FIMCO's "distribution channels"; specifically, Deere sought a list of dealers who buy FIMCO's products and offer them for resale. [DN 93 at 5.] Deere initially served requests for production on FIMCO in November of 2015, seeking "[d]ocuments sufficient to show the name and location of all retail or wholesale stores or dealers (physical or online) through which FIMCO or those authorized by FIMCO are selling or intend to sell FIMCO products bearing the colors green and yellow." [*Id.* (quoting DN 93-2 at 12).] FIMCO opposed the request, initially asserting that such information was proprietary and confidential and then stating that it "the names of any retail customers or end-user customers are not relevant to the issues in this matter." [DN 93-4 at 5.] FIMCO further indicated that it does not refer to those individuals as "dealers." [*Id.*] While maintaining its objections, FIMCO "responded with information about the methods FIMCO uses to sells its products directly to customers (trade shows, its company stores, and its own web site)." [DN 46 at 2.]

Deere then filed a motion to compel FIMCO to disclose information relating to its distribution channels, which the Magistrate Judge granted. [DN 46.] In opposition to Deere's motion, FIMCO stated "it did not know which of its customers purchased products to resell to end users because it had never compiled its sales information that way, but that it could probably estimate and compile a reasonably accurate list based on quantity and frequency of customer purchases." [*Id.* at 2 (citing DN 43 at 2).] Finding this information relevant to Deere's claims, the Magistrate Judge ordered FIMCO "to produce a list of its customers [that FIMCO] estimates are likely to be resellers of its products, which may be marked 'Attorneys' Eyes Only' and subject to the corresponding protections." [DN 46 at 5.]

FIMCO produced such a list to Deere on April 29, 2016 (the "April List"). [DN 93 at 11.] The April List "identified FIMCO's customers whose total purchases exceeded $50,000 between June 1, 2015 and April 2016." [*Id.*] Deere contends, however, that the April List "turned out to be deficient in several ways." [*Id.*] Specifically, Deere argues that the April List omitted two FIMCO dealerships that FIMCO must have known about because it later disclosed as witnesses the names of two individuals who are salespeople at those dealerships. [*Id.*] Deere further contends that the April List further omitted six FIMCO dealers that Deere discovered after performing a brief Internet search. [*Id.*]

To address this issue, the Magistrate Judge held a telephonic status conference on June 7, 2016. [DN 64.] In response to the parties' dispute, the Magistrate Judge ordered FIMCO to "provide Plaintiff with an updated 'customer-reseller' list on or before Friday, June 10, 2016." [*Id.*] In response, FIMCO produced two more lists (the "June Lists"). [DN 93 at 12.] The first June List used an expanded time frame and "identifie[d] customers who have total purchases (likely for resale purposes) equal to or in excess of $50,000.00 of FIMCO products bearing the colors green and yellow, from January 1, 2014 through May 31, 2016." [DN 92-10 at 2.] The second June List identifies "companies that FIMCO believes and hopes to be its current dealers, even though they did not have purchases of FIMCO products bearing the colors green and yellow in excess of $50,000.00 from January 1, 2014 through May 31, 2016." [DN 93-11 at 2.] As discussed in greater detail below, Deere again found many alleged deficiencies with the updated June Lists. After unsuccessfully attempting to resolve this dispute, Deere sought leave from the Magistrate Judge to file a motion for sanctions, which the Magistrate Judge granted on July 5, 2016. [DN 72.]

## STANDARD

Deere has moved for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2). [DN 93 at 7–8.] Rule 37(b)(2)(A) provides that, if a party fails to obey a discovery order, a district court "may issue further just orders" which include, but are not limited to:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **(iii)** striking pleadings in whole or in part;
>
> **(iv)** staying further proceedings until the order is obeyed;
>
> **(v)** dismissing the action or proceeding in whole or in part;
>
> **(vi)** rendering a default judgment against the disobedient party; or
>
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). Rule 37(b)(2)(C) further provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"A district court's decision to invoke Rule 37 sanctions is reviewed . . . for an abuse of discretion." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 490–91 (6th Cir. 2014) (quoting *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994)). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.* (quoting *Beil*, 15 F.3d at 551).

## DISCUSSION

Deere requests that the Court impose three sanctions as a result of FIMCO's alleged noncompliance with the Court's discovery orders. These are that the Court 1) take as established that Deere and FIMCO have the same distribution channels for purposes of the "likelihood of confusion" analysis of a trademark infringement claim, 2) exclude from testifying two individuals FIMCO disclosed as witnesses but who work at dealerships FIMCO allegedly failed to disclose on its dealer lists, and 3) to award Deere reasonable costs and attorney's fees incurred in seeking the requested discovery from FIMCO. [DN 93 at 8.]

When reviewing a district court's decision to grant sanctions, the Sixth Circuit considers four factors:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). As Deere does not seek the sanction of dismissal here, only the first three factors are relevant to this Court's analysis of whether sanctions are appropriate. As an initial matter, the Court notes that the three factors imply, as a prerequisite to their application, a finding that FIMCO "fail[ed] to cooperate in discovery." *Id.* Although the Court is not persuaded that this is the case, the Court will proceed to an analysis of the relevant factors, which the Court further finds does not justify Rule 37 sanctions in this case.

1. **Willfulness, bad faith, or fault**

Deere asserts that it is clear from the record that FIMCO has acted in bad faith. [DN 93 at 20.] FIMCO responds, in opposition, that "[t]he criteria used in the preparation of each list was disclosed, created and applied in good faith." [DN 109 at 17–18.]

In its motion, Deere identifies what it alleges are numerous omissions and inconsistencies between the April and June Lists which it contends demonstrate that FIMCO failed to cooperate in discovery in good faith. FIMCO addresses several of these contentions in its response. And while it certainly appears that FIMCO's disclosures have been somewhat unorganized and perhaps less than ideal, the Court is not persuaded that FIMCO has disobeyed Court orders willfully or in bad faith.

For example, Deere asserts that, despite FIMCO's assertions to the contrary, it does maintain a "dealer list" and it uses that list to distribute its annual "dealer catalog." [DN 93 at 21.] Deere argues that FIMCO's decision to use various criteria in compiling its lists, rather than producing that list, is evidence of FIMCO's efforts to evade orders compelling discovery. FIMCO responds, however, by explaining that its annual catalogs are sent to "past, current or prospective dealers of any Ag Spray brand products from any of its subdivisions." [DN 109 at 15.] As a large portion of FIMCO's product line consists of lawn and garden products not involved in the present suit, FIMCO explains that a great number of "dealers" on its annual catalog mailing list are "'lawn and garden' product dealers, equipment manufacturers who need tanks for their equipment manufacturing process, parts dealers and high volume end-users." [*Id.* at 15–16.] For instance, FIMCO explains that "[o]f Ag Spray brand's 320 page catalog, only 10 pages (or 3% of the catalog) are dedicated to towed sprayers and applicators at issue in this case." [*Id.* at 16.] Accordingly, producing the entire mailing list for FIMCO's Ag Spray catalog

would include individuals and companies who purchase a vast array of Ag Spray products that do *not* include yellow and green Ag Spray sprayers and applicators, and thus would be quite over-inclusive. The Court finds this explanation reasonable and disagrees that it demonstrates any bad faith or disobedience on behalf of FIMCO.

Deere also points to two dealerships FIMCO omitted from the April list but that employ two witnesses FIMCO later disclosed as expert witnesses due to their experience dealing in FIMCO products. [DN 93 at 21.] These are Cindy Perkins of Perkins Supply and Todd Yeazel of Fertilizer Dealer Supply in Wisconsin. [DN 93 at 21; DN 109 at 20–21.] However, as FIMCO points out, it did disclose these companies at various points in the discovery process according to the varying criteria it used. For instance, FIMCO explains that Perkins Sales did not meet the objective sales criteria of the April List (purchases of at least $50,000 between June 1, 2015 and April 2016), nor the extended timeframe of the first June list (purchases of at least $50,000 between January 1, 2014 and May 31, 2016), and therefore it was not included on either list. [DN 109 at 11; 29.]

FIMCO chose the $50,000 sales figure because the agricultural equipment at issue in this case "generally sells for between $30,000 and $45,000. Thus, $50,000 in sales revenue would likely mean the purchase of 2 or more pieces of such equipment in less than a year, which would be a reasonable indication that the purchaser might be a current dealer, and not an end-user." [*Id.*] FIMCO explains that, as "Perkins Sales had no purchases of green and yellow Ag Spray towed sprayers and applicators," during the relevant time periods, it was not included. However, as Perkins Sales had previously made "low sales over an extended period," FIMCO did include Perkins Sales on the second June List, which was compiled using subjective criteria based upon

who FIMCO believes and hopes to be its current dealers despite a lack of *recent* sales. [DN 109 at 18.]

Moreover, FIMCO did disclose various locations of Fertilizer Dealer Supply, including its Michigan, Missouri, and Ohio locations, on its April and first June Lists. [*Id.* at 20–21.] Deere takes issue with the fact, however, that Fertilizer Dealer Supply's Wisconsin location, where Todd Yeazel is employed, was not on any of FIMCO's lists. [DN 93-12 at 3.] However, FIMCO explains that the Wisconsin location of Fertilizer Dealer Supply was not included on any of its lists because it simply did not meet the criteria for "locations to which it had billed or shipped the relevant equipment," during the pertinent time periods, as did the other locations. [DN 109 at 29.] The Court finds these explanations to be reasonable and accordingly does not believe the sanction of excluding these two witnesses is warranted.

Deere also points to nine dealers that were omitted from the June Lists but included on the original April list. In response to Deere's concerns about these omissions, FIMCO asserted that it removed many companies from the first June List because, upon review, it determined that these companies were not engaged in re-sale of FIMCO products, but rather were using FIMCO products either for their own use or to perform agricultural services. [DN 93 at 13.] But accordingly to Deere, "some of these nine now-missing dealers have names that appear to be dealer or reseller names rather than the names of end-user customers, such as Ag Pro - Bainbridge, O'Malley Equipment IOLA, and Green Country Equipment." [DN 93 at 13.] Deere argues that various omitted companies do not advertise themselves as providing spraying services, as FIMCO claims, and that some even state that they sell FIMCO's Schaben brand. [DN 93 at 14.] FIMCO explains, however, that its Schaben brand was phased out in 2013 and replaced with FIMCO's Ag Spray brand. [DN 109 at 19.] Accordingly, FIMCO explained that

8

because a company advertised the Schaben brand in 2016 "does not make it a current dealer of new green and yellow Ag Spray towed sprayers and applicator" such that they "deal" in the sort of FIMCO products that are the subject of this dispute. [*Id.*] Moreover, Deere has not shown that any of these omitted dealers are in fact dealers, contrary to FIMCO's assertions, and, without more, the Court is unwilling to accept that contention.

Finally, Deere takes issue with the fact that eight customers were included on FIMCO's April List and second June List, but omitted from the first June List. FIMCO's explanation for this discrepancy is that the April and first June Lists used objective sales criteria which focused on dollar amounts and specific timeframes, while the second June List included FIMCO's subjective beliefs that certain companies may still be dealers of FIMCO products despite the fact that they did *not* make sufficient purchases to meet the sales criteria FIMCO used for the April and first June List. [DN 93-12 at 2–3.] The Court acknowledges that the objective and subjective components of FIMCO's lists are somewhat confusing, but does not view them as willfully uncooperative or as bad faith conduct. Rather, these appear to the Court to be reasonable efforts to include all possible dealers of the relevant FIMCO products.

FIMCO states in its response that, as it does not maintain a dealer list limited to sellers of Ag Spray yellow and green equipment, [t]his was FIMCO's first attempt ever to mine its data in an effort to create a list." [DN 109 at 22.] Although Deere vigorously disputes this contention by pointing to FIMCO's dealer mailing list for its annual Ag Spray catalog, [DN 128 at 7–9], as discussed above, the Court finds FIMCO's decision not to produce that presumably over-inclusive list to be a reasonable one.  And, in compiling its more narrow dealer lists, FIMCO argues that it "created the various lists in good faith, with disclosed criteria and explanations, and adapted and addressed Deere's 'after the fact' complaints and misunderstandings." [*Id.* at 22–

9

23.] Moreover, FIMCO contends that it "meaningfully participated in meet and confer sessions and informal hearings with this Court to work through this process, and FIMCO met every deadline set, some of which were extremely tight." [*Id.* at 22–23.] Although the Court recognizes that FIMCO's disclosures have been disorganized and likely somewhat inefficient, it can discern no bad faith or willful disobedience on behalf of FIMCO, and accordingly, finds that this factor weighs against imposing sanctions.

### 2. Prejudice

Deere argues that it has suffered prejudice as a result of FIMCO's alleged lack of cooperation with discovery. [DN 93 at 22.] Specifically, Deere alleges that FIMCO has failed to provide a complete list of its dealers, which will make it more difficult for Deere to demonstrate that the parties' distribution channels overlap and to demonstrate actual confusion, both of which are relevant to the "likelihood of confusion" analysis of a trademark infringement claim. [*Id.*] For example, Deere further states that its investigator, William Shanks, was limited in his ability to investigate and identify potential trial witnesses who may have witnesses actual confusion due to the lack of a complete list of dealers and tight time constraints due to an impending discovery cut-off date. [DN 93 at 18–19.] Additionally, Deere claims prejudice as a result of the "effort and expense" it has exerted in its attempts to obtain a more complete list of FIMCO's dealers, and that this time could have been better dedicated to further developing its case. [*Id.* at 23.]

The Sixth Circuit has recognized that a party suffers prejudice from another party's failure to comply with discovery if the un-cooperating party's actions have the event of "preventing [the other party] from obtaining evidence essential to the preparation of its defense." *See Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). However, the Court is not convinced that such is the case here. Deere repeatedly asserts that "we will never

know" the extent of prejudice it has experience as a result of FIMCO's alleged failure to disclose all of its dealers. [DN 93 at 22–23.] In other words, Deere has pointed to no specific prejudice it has suffered or any additional dealers it would have surveyed or deposed had they not been "concealed" by FIMCO. Deere contends that, while it has discovered some evidence of actual confusion, "Deere cannot know or prove how much additional evidence it might have discovered but for FIMCO's delay and the incompleteness of FIMCO's list." [*Id.* at 23.] Again, as to whether FIMCO "improperly withheld or did not include dealer identities," Deere states "we will never know." [DN 93 at 23.]

Certainly, the Court acknowledges that Deere has pointed out, in numerous ways, why FIMCO's discovery responses were perhaps not the most efficient means of providing the requested information. However, FIMCO has addressed and explained nearly every issue Deere raised in the present motion to the Court's satisfaction. Moreover, as FIMCO points out, Deere has pointed to no companies that were not included on any of FIMCO's lists but that, in fact, are current dealers of green and yellow Ag Spray towers and sprayers and that Deere would have contacted for the instant litigation. [*See* DN 109 at 22.] Without more, the Court does not find that Deere has been prejudiced in its ability to develop its case, and accordingly finds that this factor also weighs against imposing sanctions.

With regard to the costs and attorneys' fees Deere seeks, it argues that "[w]hen a party fails to obey a court order to provide discovery, monetary sanctions are mandatory." [DN 93 at 25 (citing Fed. R. Civ. P. 37(b)(2)(C)).] Indeed, Rule 37(b)(2)(C) provides that "court[s] *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" of the other party to obey court orders. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). However, as the Court has explained throughout

11

its analysis, it is not persuaded that FIMCO has "disobeyed" any orders of the Court. Accordingly, Deere's request for mandatory monetary sanctions is likewise denied.

### 3. Warning of possible sanctions

Finally, the Court is further unconvinced that FIMCO was warned that the methods it chose to disclose its dealer information to Deere were so unacceptable as to lead to sanctions. The Sixth Circuit has stated that, for purposes of this factor, "[c]lear notice is required" about the potential imposition of sanctions. *Peltz*, 292 F. App'x at 480. For example, courts have been reluctant to uphold sanctions of dismissal under Rule 37 absent "firm and definite" statements by the district court sufficient to constitute "notice that '*further* non-compliance would result in dismissal.'" *Freeland*, 103 F.3d at 1279–80 (quoting *Vinci v. Consol. Rail Corp.*, 927 F.2d 287, 288 (6th Cir. 1991); *Harris v. Callwood,* 844 F.2d 1254 (6th Cir. 1988)).

As Deere stated in its motion, the Magistrate Judge twice denied Deere's requests for sanctions against FIMCO, including the sanction that the Court take as established that Deere and FIMCO have the same distribution channels. [DN 93 at 10 (citing DN 46); DN 93 at 12 (citing DN 64).] Although FIMCO was certainly aware of *Deere's* intention to seek sanctions against it, which it did twice before obtaining leave from the Magistrate Judge to file the instant motion, the Court does not find that this equates to a warning to FIMCO that it was engaging in conduct that may lead to discovery sanctions. Accordingly, this factor, too, weighs against imposing sanctions against FIMCO.

Rule 37 provides that, if a court determines that a party has failed to obey a discovery order, the court "*may* issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). As discussed above, the Court is not persuaded that FIMCO disobeyed the Magistrate Judge's order compelling discovery. Regardless, however, Rule 37 vests district courts with the discretion whether to issue

12

such "further just orders" granting sanctions. *Id.* Based upon a consideration of the above factors, the Court will not exercise that discretion at this time.

## CONCLUSION

For the reasons stated herein, Deere's motion for sanctions [DN 94] is **DENIED.**

**IT IS SO ORDERED**.


cc:     Counsel