UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:15-CV-105-TBR

DEERE & COMPANY,                                    PLAINTIFF/COUNTER-DEFENDANT

v.

FIMCO INC., d/b/a/ SCHABEN
INDUSTRIES,                                         DEFENDANT/COUNTER-CLAIMANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Deere & Company ("Deere") brings this action alleging that Defendant FIMCO

Inc. ("FIMCO") is using Deere's green and yellow color scheme on agricultural equipment in

violation of federal trademark and common law. FIMCO, in turn, has counterclaimed against

Deere, seeking a declaration of non-infringing use. Further detail may be found in this Court's

March 8, 2017 Memorandum Opinion and Order, [DN 161.] There are currently three pending

motions *in limine* before the Court, each of which are ripe for adjudication. [DN 165; DN 169;

DN 170.] The Court will address each of these motions in turn.

STANDARD

Using the inherent authority to manage the course of trials before it, this Court may

exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v.*

*United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor*

*Co.*, 718 F.3d 556, 561 (6th Cir. 2013); *Mahaney ex rel. Estate of Kyle v. Novartis Pharm. Corp.*,

835 F. Supp. 2d 299, 303 (W.D. Ky. 2011). Unless such evidence is patently "inadmissible for

any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997),

though, the "better practice" is to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire*

*& Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy

and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). A ruling *in limine* is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38). Consequently, the Court may revisit its *in limine* rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

DISCUSSION

Initially, the Court notes that both parties should be mindful that this case is set for a bench trial rather than a jury trial. As such, the Court can and will only consider the evidence it has found to be relevant and admissible at trial.

### 1. FIMCO's Motion *in Limine*

First, FIMCO filed a motion *in limine* seeking to prevent Deere from 1) offering evidence related to FAST Manufacturing Company's (FAST) decision to use green and yellow colors and 2) referencing the Supplemental Report of Deere's expert, Neil Dahlstrom. [DN 165 at 1–2 (FIMCO's Motion *in Limine*).] Deere responded, [DN 180], and FIMCO did not reply. For the following reasons, FIMCO's motion, [DN 165], is **DENIED**.

### a. Testimony of Clay Roll

FIMCO first seeks to preclude "[a]ny reference to the reason(s) why FAST purportedly chose to use the colors yellow and green on its agricultural equipment." [DN 165 at 1.] The parties agree that any such evidence will be presented at trial through the testimony of Clay Roll, FAST's General Manager. [DN 165; DN 180; DN 99-79 (Roll's Declaration).] FAST is an agricultural company which sells, among other products, agricultural sprayers and nutrient applicators. [DN 99-79 at 1.] Roll began working for FAST in 2009, at which time FAST used

primarily green and yellow colors on its equipment. [*Id.*] Roll testified that his understanding of FAST's purpose for using green and yellow was "to associate with the quality" of the John Deere brand, and that FAST's founder, Verlyn Fast, told him this "[m]any times." [DN 180-2 at 2 (Roll Deposition Excerpts).] Roll stated that employees and customers of FAST understood the green and yellow colors to "look like" and be associated with Deere. [DN 99-79 at 2.] In 2012, after Deere requested that FAST cease use of the green and yellow color scheme, Deere and FAST entered into an agreement pursuant to which FAST would manufacture certain equipment for Deere bearing the Deere brand, but otherwise cease using green and yellow on its FAST-branded equipment. [DN 99-79 at 2–3; DN 180-2 at 4–5.] As General Manager, Roll helped negotiate this agreement with Deere. [DN 180-2 at 5.]

FIMCO argues that allowing Roll to testify regarding FAST's decision to use green and yellow would be improper for multiple reasons, the first of which is that Roll did not work at FAST until 2009, long after FAST made that original decision, and therefore that Roll lacks foundation for such testimony. [DN 165 at 1.] Moreover, FIMCO asserts that Roll's testimony as to comments made to him by Verlyn Fast is inadmissible hearsay. [*Id.*] Finally, FIMCO argues that FAST's activities are irrelevant to the intent and conduct of FIMCO. [*Id.*]

In response, Deere argues, first, that, because Roll was FAST's General Manager from 2009 to 2012, during which time FAST still used green and yellow on its own equipment, Roll can properly testify as to his personal understanding of why FAST used those colors during that time. [DN 180 at 3.] The Court agrees. Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. "'The threshold for Rule 602 is

low[,]' and '[t]estimony should not be excluded for lack of personal knowledge unless no reasonable [factfinder] could believe that the witness had the ability and opportunity to perceive the event that he testifies about.'" *United States v. Smith*, 516 F. App'x 592, 595 (6th Cir. 2013) (quoting *United States v. Hickey,* 917 F.2d 901, 904 (6th Cir. 1990)). Here, as FAST's General Manager, Roll "oversee[s] all aspects of the company's business, including manufacturing, product design, sales, advertising, and partnerships." [DN 99-79 at 1.] Roll also stated in his declaration that, after joining FAST in 2009, "it was always [his] belief that use of the green and yellow colors on FAST's equipment served to associate our equipment with the quality and reputation of Deere, which was why some customers wished to purchase FAST equipment in those colors." [*Id.* at 2.] Similarly, because Roll helped negotiate the 2012 agreement with Deere, he has firsthand knowledge of "why FAST was willing to transition to other colors . . . and why FAST would want Deere to ask other manufacturers to cease using the Deere Colors as well." [DN 180 at 4.] Accordingly, by virtue of his position as General Manager and his deep involvement in the company, the Court finds that Roll has personal knowledge of FAST's decision to use the green and yellow color scheme.

Deere further argues that, pursuant to Rule 803(3), Roll can testify as to the statements Verlyn Fast made to him regarding why FAST originally chose to use green and yellow. [DN 180 at 3–4.] Pursuant to Rule 803(3), an exception to the rule against hearsay, a witness can testify as to "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). The Sixth Circuit has further explained that "Rule 803(3) allows witnesses to recount hearsay statements (that is, statements offered to prove the truth of the statements' factual content) when the statement's original declarant is expressing his or her then-existing state of mind." *United States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir.), *cert. denied sub*

*nom. Ferguson v. United States*, 136 S. Ct. 700 (2015), and *cert. denied*, 136 S. Ct. 2507 (2016).

Here, the Court finds that Fast's statements to Roll that FAST used green and yellow "to associate with the quality" of the Deere brand are statements of Fast's then-existing state of mind; specifically, Fast's motive for having his company manufacture its equipment in green and yellow colors. *See* Fed. R. Evid. 803(3). Accordingly, Roll can testify as to these statements.

Finally, the Court agrees with Deere that Roll's testimony about FAST is relevant. Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and that "is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). As a manufacturer of agricultural sprayers and applicators, FAST is a competitor of FIMCO. Here, Roll's testimony regarding FAST's knowledge of and motive for using a green and yellow color scheme on its agricultural equipment may be probative of FIMCO's motive for using those colors. Therefore, Roll can testify regarding FAST's use of green and yellow colors.

### b. Supplemental Expert Report of Neil Dahlstrom

FIMCO next argues that the Court should prohibit Deere from referencing the Supplemental Expert Report (the "Supplemental Report") of Neil Dahstrom, Deere's archivist, arguing that it contains over 700 pages of new materials and was disclosed "the night before pre-trial filings were due." [DN 165 at 2.] In response, Deere argues that it fully complied with Federal Rule of Civil Procedure 26(e)(2) in filing the Supplemental Report and that the Supplemental Report was timely filed. [DN 180 at 6.]

Rule 26(e)(2) provides:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this

> information must be disclosed by the time the party's pretrial disclosures under
> Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2). The Rule does not set limitations on the amount or length of permissible supplemental disclosures. *See* Fed. R. Civ. P. 26(e)(2). The only limitation that the Rule imposes is that supplemental disclosures must be made by the deadline for pretrial disclosures. Fed. R. Civ. P. 26(e)(2). Here, the Court's Scheduling Order required the parties to disclose pretrial materials by April 7, 2017. [DN 155 at 1–2 (Scheduling Order).] Therefore, Deere timely disclosed the instant Supplemental Report and accompanying exhibits on April 6, 2017. [DN 165; DN 180.]

With regard to the content of the supplemental disclosures, FIMCO alleges that the Supplemental Report contains "more than [700] pages of newly disclosed evidence." [DN 165 at 2.] However, Deere states in its response that "the supplemental report did not change Mr. Dahlstrom's earlier opinions *at all*. It only stated that it was providing additional materials supporting Mr. Dahlstrom's existing opinions." [DN 180 at 7.] FIMCO did not file a reply to refute this argument. *See KCH Servs., Inc. v. Vanaire, Inc.*, No. 05-777-C, 2010 WL 1416672, at *3 (W.D. Ky. Mar. 31, 2010) ("[The expert] did not fundamentally change his method of calculating damages from one report to the next. After his initial report, [the expert's] qualifications and the nature of his expected testimony remained largely the same. . . [P]laintiff[] fulfill[ed] . . . its duty to supplement [the expert's] reports under Rule 26(e).")

Moreover, "[696] of the referenced pages comprise two books about Deere, *John Deere Tractors and Equipment* and *The Bigger Book of John Deere*, which mostly contain pictures, reflecting Deere's consistent use of green and yellow over many decades." [DN 180 at 8.] And "[t]he remaining 84 pages of the exhibits provided with Mr. Dahlstrom's supplemental report are mostly single pages from newspapers, or short articles from periodicals." [*Id.*] Though these

materials are lengthy, the Court does not find that they change Dahlstrom's earlier opinions or theories such that they constitute improper new evidence as opposed to supplemental materials. Rather, the Supplemental Report and exhibits offer further support for Dahlstrom's original opinion that green and yellow are well-recognized as colors of John Deere. [*Id.*] Accordingly, the Court finds that the Supplemental Report complies with Rule 26(e)(2) and therefore will not prohibit reference to it at trial. Therefore, FIMCO's motion *in limine*, [DN 165], is **DENIED**.

## 2. Deere's Motion *in Limine* Regarding Mr. William Shanks' Notes of Salespersons' Out-of-Court Statements

Second, Deere filed a motion *in limine* seeking to preclude FIMCO from offering into evidence portions of the notes of Deere's expert, William Shanks, 1) as evidence of "what the salespeople Mr. Shanks interviewed said that their customers said or did not say," or 2) "as evidence of those customers' state of mind." [DN 169.] FIMCO responded, [DN 177], and Deere did not reply. For the following reasons, Deere's motion, [DN 169], is **DENIED**.

During discovery, Deere hired Shanks, the Lead Investigator at Marksmen, Inc., a private intellectual property investigation firm, to conduct a survey investigation and write a report on his findings. [DN 110-1 at 1 (Declaration of William Shanks).] In his Declaration, Shanks summarized his investigation as follows:

> Over several weeks in June 2016, I spoke with a total of 20 salespeople at different dealership locations, and with 18 of those 20 salespeople, I said something very close to the following: "I always thought [or assumed] that yellow/green farm equipment was made by . . . ." or "I always thought [or assumed] that the yellow/green coloring looked like . . . ." I would not finish the sentence, but would pause, to see if the sales personnel would finish the sentence. Each time I raised this unfinished sentence (18 of 18 times) the salesperson responded to my partial sentence and pause by stating promptly either "John Deere" or "Deere." (In two of the 20 interviews, I did not put this statement to the salesperson.) I took notes of these conversations, which eventually became part of my Report in this case.

[*Id.* at 2 (internal citations omitted).] Based on this investigation, Shanks opined "that salespeople at dealerships that sell FIMCO's agricultural equipment perceive the green and yellow colors on agricultural equipment as associated with Deere, or at a minimum, recognize or believe that people generally associate such colors with Deere." [DN 89-4 at 54 (Shanks' Report).]

What Shanks also took notes on but did not include in his report, however, are his conversations with each of the twenty salespersons following their responses to his initial open-ended question in which several salespeople explained that consumers of agricultural products do not confuse John Deere and FIMCO products. [*See* DN 152-2 at 1–18 (Shanks' Spreadsheet).] For example, after one salesperson finished Shanks' sentence with "John Deere," he stated "that people in the agri-business would know that a [FIMCO] pull behind yellow/green fertilizer applicator is NOT John Deere equipment." [DN 152-2 at 1.] Another explained that "customers come into the store knowing what they want and that no one thinks [FIMCO] equipment has anything to do with [John Deere]." [*Id.* at 4.]

In the instant motion, Deere argues that, although the Shanks' notes of the salespeople's' responses to his unfinished sentence inquiries are admissible, "Shanks' notes of what salespeople told him regarding what their customers said or did not say is classic hearsay within hearsay, which must be excluded." [DN 169-1 at 3.] The former survey results are potentially helpful to Deere, as they could suggest an association between green and yellow colors and John Deere, which is relevant to Deere's trademark dilution and trademark infringement claims. *See* 15 U.S.C. § 1125 ("'[D]ilution by blurring' is *association* arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." (emphasis added)); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th

Cir. 2012) ("To evaluate the strength factor under the *Frisch* [trademark infringement] analysis, this Court 'focuses on the distinctiveness of a mark and its recognition among the public.'") In an earlier opinion, the Court held that these results were admissible because "the answers Shanks obtained consisted of the states of mind of those polled, and accordingly do not constitute inadmissible hearsay" pursuant to Federal Rule of Evidence 803(3). [DN 161 at 9 (March 8, 2017 Memorandum Opinion and Order) (citing 6 *McCarthy on Trademarks and Unfair Competition* § 23:2.75 (4th ed. 2017) ("[S]ince at least 1951 the cases are now unanimous that evidence of the state of mind of persons surveyed is not inadmissible as hearsay."); *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 931 (7th Cir. 1984) ("[C]ommentators unanimously agree that survey results are not inadmissible hearsay; rather, the results are reports of the state of mind of the interviewees, Fed. R. Evid. 803(3).").]

The latter survey results, however, are potentially unhelpful to Deere. That is, they could suggest that the hallmark standard for trademark infringement, "likelihood of confusion," is not satisfied in this case. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) ("The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.") So naturally, it is this portion of Shanks' notes that Deere seeks to exclude in the instant motion. [*See* DN 169.]

The Court agrees that, unlike the salespeople's responses to Shanks' open-ended question about what they "thought" green and yellow was associated with, what the salespeople told Shanks about whether their customers can distinguish between FIMCO and John Deere products and whether they could recall a time when a prospective customer confused the two brands are

not statements of their mental impressions. Indeed, Rule 803(3) specifically excludes from the exception "statement[s] of memory or belief to prove the fact remembered." Fed. R. Evid. 803.

However, several courts have, after finding that survey data does not fall within 803(3) or another recognized exception to the hearsay rule, considered whether the survey data is admissible under Rule 807,[1] the residual exception to the hearsay rule. *See Debra P. by Irene P. v. Turlington*, 730 F.2d 1405, 1408 (11th Cir. 1984) (Affirming district court's admission of survey evidence under the residual exception after finding that the results were probative and possessed guarantees of trustworthiness); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987) (citing Fed. R. Evid. 803(24) ("Survey evidence may be admitted as an exception to the hearsay rule if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness."); *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988) (Affirming the district court's admission of survey evidence under the residual exception after finding that the survey was necessary and trustworthy); *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996) (Affirming the district court's admission of survey evidence under the residual exception after finding that the survey was trustworthy); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 517 n.14 (3d Cir. 1998) ("In this case none of the class exceptions are present, so we examine whether the survey contains the 'circumstantial guarantees of trustworthiness' required for admissibility under Rule 803(24)."[2]); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238–39 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) (Sotomayor, J.) (Remanding to the district court for a consideration of whether surveys that inquired into interviewees' memories were necessary and trustworthy such

---

[1] In 1997, Federal Rules of Evidence 803(24) and 804(b)(5) were combined and transferred to the new Rule 807. This combination did not operate to change the meaning of the residual exception. *See* Fed. R. Evid. 807 advisory committee's note.
[2] As noted above, Rule 803(24) is a predecessor to Rule 807. *See id.*

that they were admissible under the residual exception); *Schering Corp. v. Pfizer, Inc.*, No. 98 CIV. 7000 (LMM), 2000 WL 718449, at *3–5 (S.D.N.Y. June 5, 2000), *amended in part*, No. 98 CIV. 7000 (LMM), 2000 WL 949473 (S.D.N.Y. July 10, 2000) (Finding, on remand, that the survey evidence was material, probative, necessary, and trustworthy, and was therefore admissible under the residual exception to the hearsay rule).

Federal Rule of Evidence 807 provides:

**(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

> **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
>
> **(2)** it is offered as evidence of a material fact;
>
> **(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> **(4)** admitting it will best serve the purposes of these rules and the interests of justice.

**(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

Fed. R. Evid. 807. In sum, "[a] proponent of hearsay evidence must establish five elements in order to satisfy Rule 807: "(1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice." *United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (quoting *United States v. Ochoa*, 229 F.3d 631, 638 (7th Cir. 2000)). *See also Schering*, 189 F.3d at 231 (same). These requirements are meant to ensure "that the residual hearsay exception[] will be used very rarely, and only in exceptional circumstances." Fed. R. Evid. 803(24) advisory committee's note; *see also Schering*, 189 F.3d at 233.

The Sixth Circuit has held that, "the analysis of a hearsay statement should not end when a statement" is inadmissible under the hearsay exceptions in Rule 803 or 804, "but should be evaluated under the residual hearsay exception" in Rule 807. *United States v. Laster*, 258 F.3d 525, 530 (6th Cir. 2001). Because the Court finds that Shanks' notes regarding the salespeople's statements about their customers' knowledge and confusion and their recollections of instances of confusion are not states of mind under Rule 803(3), and do not qualify for another hearsay exception, the Court will now turn to Rule 807.

### a. Equivalent Circumstantial Guarantees of Trustworthiness

The general purpose of the rule against hearsay is to safeguard against evidence subject to "four classes of risk peculiar to this kind of evidence: those of (1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered." *Schering*, 189 F.3d at 232. *See also* 2 *McCormick On Evid.* § 245 (7th ed.) ("The factors upon which the value of testimony depends are the perception, memory, narration, and sincerity of the witness."). In turn, Rules 803 and 804 delineate several exceptions to the general prohibition against hearsay evidence, the "trustworthiness of [which] is a function of their ability to minimize some of the four classic hearsay dangers." *Schering*, 189 F.3d at 233. Similarly, the residual exception requires that the evidence have certain guarantees of trustworthiness equivalent to those in Rules 803 and 804. Fed. R. Evid. 807(a)(1).

Some circuits hold simply that "[a] survey is trustworthy if it is shown to have been conducted according to generally accepted survey principles." *Harolds Stores*, 82 F.3d at 1544 (quoting *Brunswick Corp.,* 832 F.2d at 522) (10th Cir). *See also Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir. 1978) ("In the context of polls and surveys, the circumstantial

guarantees of trustworthiness are for the most part satisfied if the poll is conducted in accordance with generally accepted survey principles."). Moreover, properly conducted surveys "can also help reduce two of the four classic hearsay dangers," insincerity and faulty narration. *Schering*, 189 F.3d at 233–34. With regard to insincerity, when interviewers and respondents are unaware of the survey's purpose or the existence of litigation, the risk of insincerity is lessened. *Id.* (citing *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 684 (S.D.N.Y. 1963) ("[M]embers of the public who are asked questions about things in which they have no interest have no reason to falsify their feelings.")) In this case, though Shanks was aware of the survey's purpose, because he spoke to the salespeople under the guise of a film producer, it is clear that the respondents had no knowledge of the litigation or Shanks' purpose in conducting the survey. [*See* DN 89-4 at 53.] Accordingly, the Court finds that respondents had no motive to alter their responses.

With regard to faulty narration, the risk of this is lessened by interviewers "by framing questions in a clear, precise and non-leading manner." *Schering*, 189 F.3d at 234. Here, Shanks wrote in one section of his notes, "we asked . . . if anyone ever thinks that [yellow and green] agri[cultural] equipment, including [FIMCO], is John Deere." [DN 152-2 at 5.] In another section, Shanks wrote "[w]e asked if customers ever think that a product with similar colors was a John Deere." [*Id.* at 6.] In another portion, he wrote that the salesperson made the statements "[t]hrough conversation." [*Id.* at 3.] As an initial matter, nothing about these questions suggests to the Court that they were posed in a leading manner so as to suggest a certain response. But the strongest indicator that Shanks' questions were not leading is that many of the salespeople's responses, that people in the agricultural industry do not confuse the two brands of products, is arguably an unfavorable response for Shanks' client, Deere. Accordingly, the Court finds that the risk of faulty narration is minimal here.

With regard to faulty memory and faulty perception, "a particular memory survey, which, for example, relates to events that were learned by direct perception and are unlikely to be forgotten," can also minimize these risks. *Schering*, 189 F.3d at 234. For instance, in *Keith*, the Ninth Circuit affirmed the district court's admission of survey results consisting of statements "concerning a declarant's race and income," which are "relatively unsusceptible to the[] [faulty memory and faulty perception] classes of risk." *Schering*, 189 F.3d at 235 (citing *Keith*, 858 F.2d at 467). And in *Debra P.*, the Eleventh Circuit affirmed the district court's admission of survey evidence that asked teachers whether they "had provided instruction during 1981–82 relating to the skills tested on the SSAT–II and if so, whether that instruction had been sufficient for a student to master the skills." *Debra P.*, 730 F.2d at 1405, 1408. In analyzing the trustworthiness of this evidence, then-Judge Sotomayor in *Schering* explained that "[t]he risk that teachers would incorrectly perceive or remember whether they had taught a course in the previous year was . . . presumably small." *Schering*, 189 F.3d at 235 (citing *Debra P.*, 730 F.2d at 1405, 1408). *Contra Pittsburgh Press Club v. United States*, 579 F.2d 751, 759 (3d Cir. 1978) (excluding survey evidence as untrustworthy where respondents all had an interest in the litigation, were told of the litigation and the reason for the survey, knew which answers would be helpful to the plaintiff, and were asked to provide "details about banquets which had taken place many years before.")

Here, Shanks' interviewed the salespeople regarding whether they were aware of customer confusion or whether they could recall any specific instances of their customers confusing a John Deere and a FIMCO product. [*See* 152-2 at 1–18.] Accordingly, it appears that salespeople responded based on their own perceptions and memories as sellers of agricultural products. For example, one salesperson responded that "customers come into the store knowing what they want and that no one thinks [FIMCO] equipment has anything to do with" John Deere.

[*Id.* at 4.] Shanks repeatedly wrote in his notes that various salespeople could not recall instances in which customers came into their stores thinking a FIMCO product was a John Deere product. [*See* DN 152-2.] As sellers of agricultural equipment, it seems unlikely to the Court that salespeople in the industry would soon forget instances of customers confusing certain types of popular products. Therefore, the Court also finds that the risks of faulty memory and faulty perception are minimal here.

Furthermore, Deere has argued extensively, and surely does not now dispute, that Shanks, its *own* expert, "is experienced in undertaking this type of investigation. He applied that experience, and his investigative and acting skills and training, to a careful investigation of FIMCO's salespeople." [DN 110 at 5 (Deere's Response in Opposition to FIMCO's Motion *in Limine* to Exclude Shanks' Expert Testimony).] Further Deere has argued that "the case law is clear that undertaking a standardized telephone interview approach and relying on interview responses, as Mr. Shanks did, is a reasonable and accepted process for trademark investigators." [*Id.* at 10.] Indeed, Deere commissioned Shanks' investigation, and Deere itself seeks to rely on portions of Shanks' findings and on his expert report. The fact that portions of Shanks' notes are helpful to it while others are not does not justify exclusion of the latter. Additionally, Shanks stated in his report that he took notes "contemporaneous" with his conversations, which makes it very likely that Shanks accurately recorded the interviewees' statements as they were made. [*See* DN 89-4 at 54.]

Potentially the most important indicator of trustworthiness here is the fact that Shanks *did* record many salespeople's statements that customers are not confused between FIMCO and Deere products when that evidence is, as the Court explained above, potentially unfavorable to his client, Deere. In other words, Shanks had a motive to fabricate or otherwise fail to record

these responses in order to benefit his client. The fact that he did not do so, and that Deere fought tooth and nail to prevent the discovery and admission of this evidence, [*See* DN 136 (Magistrate Judge's Order Compelling the Production of Shanks' Spreadsheet); DN 138 (Deere's Motion to Reconsider that Order); DN 146 (Magistrate Judge's Order Denying Motion to Reconsider); DN 169], further supports its trustworthiness. In sum, the Court finds that the statements of the salespeople Shanks interviewed possess circumstantial guarantees of trustworthiness equivalent to the exceptions set out in Rules 803 and 804.

### b. Evidence of a Material Fact

The second requirement under Rule 807 is that the evidence is "is [being] offered as evidence of a material fact." Fed. R. Evid 807(a)(2). In this case, Deere has brought suit against FIMCO for trademark infringement, and FIMCO has counterclaimed for a declaratory judgment that its use of green and yellow is non-infringing. [DN 1 at 5–6 (Complaint); DN 5 at 13–16 (FIMCO's answer).] It is well established that, "[i]n any case, a court considering a claim for trademark infringement must determine the likelihood of consumer confusion." *Maker's Mark*, 679 F.3d at 419. "At the trial level, the issue of likelihood of confusion is an issue of fact." 4 *McCarthy on Trademarks and Unfair Competition* at § 23:2.75 (4th ed. 2013). Moreover, one of the eight factors the Sixth Circuit applies to determine the existence of likelihood of confusion is "evidence of actual confusion." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Accordingly, here, the existence of actual confusion, or lack thereof, among customers of FIMCO and Deere dealers is evidence of a material fact at issue in this case.

### c. Probative Value

Third, the evidence must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(3). As the Court noted above, the likelihood of confusion including, in part, the existence of any actual confusion among relevant consumers of FIMCO and Deere products, is a material fact in this case. Therefore, statements from salespeople of the agricultural products at issue in this case as to the existence or instances of such confusion is highly probative of that fact. As to the requirement that the evidence be more probative than "other evidence that [FIMCO] can obtain through reasonable efforts," many "courts view the requirement as providing a basis for a trial court to evaluate the need for the statement in the case as compared to the costs of obtaining alternative evidence." 2 *McCormick On Evid.* § 324 (7th ed.). *See Schering*, 189 F.3d at 236 ("As the district court noted, it would, moreover, be unreasonable to hale all 1166 [surveyed] physicians into court."); *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608–09 (9th Cir. 1993) ("Conceivably, FTC could bring letter-writers into court to swear, under oath and subject to cross-examination, that the contents of their letters were true. But such efforts would not be reasonable."); *United States v. Simmons*, 773 F.2d 1455, 1459 (4th Cir. 1985) ("[I]t was not reasonable to require the government to bring in the record custodians from different parts of the country to prove this simple fact.")

Shanks' spreadsheet indicates that he spoke with a total of twenty salespeople in Colorado, Indiana, Kansas, Michigan, Mississippi, Missouri, Nebraska, Ohio, Oklahoma, and Texas. [DN 152-2 at 1–18.] The Court finds that to require FIMCO to serve subpoenas ad testificandum on each of these individuals and pay for their costs to travel to Paducah, Kentucky and testify as witnesses in this case, when Deere has already provided the instant evidence to

17

FIMCO and intends to rely on portions of it, would not constitute "reasonable efforts" on behalf of FIMCO. Rather, considering that the Court is already allowing Deere to rely on portions of Shanks' results, it would be an unreasonable waste of resources to require FIMCO to obtain this evidence through its own efforts. Accordingly, this requirement is also satisfied.

### d. The Purposes of the Rules and the Interests of Justice

Fourth, Rule 807 requires that the admission of the evidence "will best serve the purposes of" the Federal Rules of Evidence "and the interests of justice." Fed. R. Evid. 807(a)(4). Courts have explained that "[t]he purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence." *Moore*, 824 F.3d at 624. Because the Court has found that the evidence at issue here is trustworthy, probative evidence of a material fact, and that it would be unreasonable to require FIMCO to obtain the evidence through its own efforts, the Court finds that this "purpose is served by admitting" Shanks' notes in this case. *See id.*

Similarly, the Court finds that "the administration of justice[] would be served by admitting the [salespeople's statements], because it would assist the [factfinder] in determining the truth" regarding likelihood of or actual confusion. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 113 (3d Cir. 2001). Additionally, it is only just and fair, after allowing Deere to rely on portions of Shanks' conversations with the salespeople, to allow FIMCO to rely on statements that occurred immediately after the statements Deere seeks to admit. In sum, the Court finds that the fourth requirement is also satisfied.

### e. Notice

Finally, the notice requirement of Rule 807 is easily satisfied here. Since Deere commissioned Shanks' investigation, it has long had notice of the contents of his full

spreadsheet, though Shanks did not include all of it in his Expert Report. Moreover, Rule 807(b) simply requires that FIMCO, "before the trial," give Deere "reasonable notice of the intent to offer the statement[s]," and to provide details such as "the declarant's name and address, so that [Deere] has a fair opportunity to meet it." Fed. R. Evid. 807(b). In this case, it is Deere's expert, Shanks, who possesses the relevant information, and therefore the Court cannot foresee Deere having any issue obtaining it. Additionally, the Court's ruling on the admissibility of these statements comes more than a month before the bench trial in this case is scheduled, [*see* DN 155], giving Deere more than ample time to "meet" the evidence. Therefore, the Court finds that the fifth and final requirement of Rule 807 is met here.

Though the Court acknowledges "that Rule 807 should only be used sparingly," *Bohler-Uddeholm*, 247 F.3d at 113, because all of Rule 807's requirements are met here, this case presents an exceptional circumstance in which its use is appropriate. For these reasons, Deere's motion *in limine r*egarding Mr. William Shanks' notes of salespersons' out-of-court statements, [DN 169], is denied.

### 3. Deere's Motion *in Limine* Regarding FIMCO's Disclaiming Trademark Rights in Green and Yellow

Third, Deere filed a motion *in limine* to prevent FIMCO from offering evidence at trial that it would be prejudiced if it were no longer allowed to use green and yellow colors on its agricultural equipment because its customers associate those colors with FIMCO. [DN 170.] FIMCO responded, [DN 178], and Deere replied, [DN 183.] For the following reasons, Deere's motion, [DN 170], is **DENIED**.

During discovery, in response to a request for admission from Deere, FIMCO stated that "FIMCO does not claim trademark rights in the use of green and yellow colors on agricultural

equipment, including tractors."[3] [DN 170-1 at 2.] Deere argues that, as a result, FIMCO cannot argue that the reason it would be prejudiced if it were prohibited from using green and yellow is because its customers "associate" those colors with FIMCO agricultural equipment. [*Id.*] In response, FIMCO asserts that it "reasonably understood that [interrogatory] to ask whether FIMCO had a registerable claim to its use of the colors green and yellow and therefore sought to exclude others from using the same colors on agricultural equipment," which is does not. [DN 178 at 3.] However, FIMCO has always maintained that it would be prejudiced if it were unable to continue using green and yellow colors on its equipment. [*Id.*] And indeed, Deere acknowledges that in determining whether an injunction is proper, the Court must "consider[] the balance of hardships between the plaintiff and defendant." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting *eBay Inc., et al. v. MercExchange, LLC,* 547 U.S. 388 (2006)).

As an initial matter, the Court is unable to discern any inconsistency between FIMCO's response that it does not claim trademark rights in green and yellow and its assertion that it has long sold green and yellow products to its customers, its customers know it sells green and yellow products, desire to purchase those products, and that it would be harmed if it were no longer able to do so. But moreover, even if Deere is correct that the two assertions are inconsistent, it appears to the Court that, rather than placing a blanket ban on FIMCO's ability to argue this theory, Deere's claim is more properly directed toward impeachment on the basis of inconsistency. Accordingly, at this time, the Court will deny Deere's motion, [DN 170.] Should Deere wish elaborate further on its position to the Court before or at trial, it is free to do so.

---

[3] The Court notes that the portion of the Record Deere to which Deere cites for the quoted language, [DN 93-2], contains responses to Deere's request for production of documents rather than request for admissions. However, because there is no dispute between the parties that FIMCO provided this response, [DN 170; DN 178], the Court will assume as much.

CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. FIMCO's Motion *in Limine*, [DN 165], is **DENIED**.

2. Deere's Motion *in Limine* Regarding Mr. William Shanks' Notes of Salespersons' Out-of-Court Statements, [DN 169], is **DENIED**

3. Deere's Motion *in Limine* Regarding FIMCO's Disclaiming Trademark Rights in Green and Yellow, [DN 170], is **DENIED.**

Date:

cc:     Counsel